**MORGRIDGE, et al., Plaintiffs-Appellees, v CONVERSE, et al., Defendants-Appellants.**

Ohio Appeals, Second District, Madison County.

No. 157. Decided March 20, 1947.

Frank J. Murray, London, for plaintiffs-appellees.
A. G. Kirby, Plain City, and S. E. Robison, London, for defendants-appellants.

## OPINION

By WISEMAN, J.

This is an appeal on law from the judgment of the Common Pleas Court of Madison County. The action was one in ejectment which was tried to the court, without the intervention of a jury, upon the pleadings, certain court records, and on an agreed statement of facts.

A concise statement of facts agreed to is as follows:

On March 25, 1902, Henry B Converse, who was the owner of the fee simple title to 280 acres of land in Madison County, Ohio, of which the 5 acres in controversy in this action was a part, filed in the U. S. District Court for the Southern District of Ohio, Eastern Division, his petition in voluntary bankruptcy, in which he alleged that he was willing to surrender all his property for the benefit of his creditors, **except such as is exempt** by law; he was duly adjudged a bankrupt and Trustees were appointed who filed their report that they had surveyed and set aside to the bankrupt as his homestead the 5 acres described in the petition in this action; the Trustees filed in the U. S. District Court their petition praying for an order and judgment directing them to sell the said 280 acres belonging to the bankrupt's estate, which petition recites that the Trustees had theretofore set off, out of said 280 acres, the said 5 acre homestead; the Bankruptcy Court ordered the Trustees to sell said real estate at public auction in the manner and form as prayed for in the petition; notice of sale was duly published in which it was stated that the Trustees would offer for sale said 280 acres of land, which was described in said advertisement by metes and bounds, and following said description appeared the statement:

"Said parcel will be sold subject to the right of Henry B. Converse, Bankrupt, to use and occupy as a homestead a portion thereof, described as follows, viz:" (here follows the same description of the 5 acres as is set out in the petition herein.)

Later the Trustees filed their report that pursuant to the former order they had sold the 280 acres of land to William Morgridge, which sale was confirmed, and the Trustees were ordered to execute and deliver to the purchaser a deed for the land sold, "subject to the homestead rights of said Henry B. Converse as set forth in the petition therein;" on March 19, 1903, said Trustees executed and delivered a deed conveying said 280 acres to William Morgridge, which deed, after describing said lands, provides:

"Subject to the right of Henry B. Converse to use and occupy as a homestead a portion thereof, described as follows, viz:" (here follows the same description of the 5 acres as is set out in the petition herein);

said Henry B. Converse, together with his wife, Elizabeth B. Converse, continued to live in said homestead from the time

of its assignment on September 13, 1902, to the death of Henry B. Converse, which occurred on April 23, 1915, and from the latter date the widow continued in the occupancy thereof until her death, which occurred on August 31, 1944.

On this state of facts the issue presented relates to the owner-ship and right of possession of the 5 acres of land set off as a homestead. The plaintiffs-appellees being the successors in interest to William Morgridge, the purchaser of the 280 acres at the Trustees' sale, contend that title to the 5 acres passed to the purchaser under the Trustees' deed; that the homestead rights have been terminated and that they are the owners and are entitled to the possession of said 5 acres.

The defendants-appellants, being the heirs-at-law of Henry B. Converse, bankrupt, contend that title to the 5 acres set off as a homestead did not pass to the purchaser under the Trustees' deed, for the reason that the Bankruptcy Court was without jurisdiction to order the sale of the 5 acres, subject to the homestead, and that the Trustees' deed, as it relates to the 5 acre tract, was null and void.

The trial court rendered judgment for the plaintiffs-appellees. The defendants-appellants assign as error that the trial court erred in holding that the Bankruptcy Court had jurisdiction to sell the 5 acre homestead tract subject to the homestead of Henry B. Converse, and that the order of sale, sale and confirmation thereof, even if in excess of the court's jurisdiction, are not subject to collateral attack. They also claim that the trial court erred in holding that Henry B. Converse, and those claiming under him, are estopped by laches from asserting that the Bankruptcy Court exceeded its jurisdiction, and, likewise, from asserting that the order of the Bankruptcy Court, insofar as it purported to sell the homestead tract, was void.

The Bankruptcy Court sold the farm containing 280 acres, of which the 5 acre tract set off as a homestead was a part, subject to the right of Henry B. Converse, bankrupt, to use and occupy said tract as a homestead. Did the Bankruptcy Court have jurisdiction to make such an order? If it had jurisdiction, then, obviously, title to the 5 acre tract passed to the purchaser and the plaintiffs-appellees must prevail. If the court was without jurisdiction to make the order, then the court must determine the additional question as to whether such order is subject to collateral attack.

Very able and exhaustive briefs have been submitted by counsel. We have examined the authorities cited and many others. Some of the cases cited are not applicable to the issues herein presented, others can be distinguished. To discuss all

the numerous cases cited will not serve any useful purpose; only a few cases bearing directly upon the issues presented will be cited or discussed.

The Bankruptcy Act does not directly grant or define any exemptions, but provides that the Act—

"shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition." (Sec. 6, of the 1898 Bankruptcy Act; Sec. 24 of Title 11,— Bankruptcy, U. S. C.)

The applicable exemption sections in effect in Ohio at the time the bankruptcy proceedings were commenced are found in Revised Statutes of Ohio, as follows:

"R. S. Sec. 5435 (now **Sec. 11730 GC.**)

Husband and wife living together, a widow or a widower living with an unmarried daughter or unmarried minor son, **may hold exempt from sale, on judgment or order, a family homestead** not execeeding one thousand dollars in value; and the husband, or, in case of his failure or refusal, the wife, shall have the right to make the demand therefor; but neither can make such demand, if the other has a homestead. **Provided, however, that in case of assignment, for the benefit of creditors, upon filing the written consent of husband and wife to the sale of any such homestead property as may be exempt under the provisions of this act, the said homestead may be sold subject to the dower and homestead right herein provided.**"

"R. S. Sec. 5438 (now **Sec. 11734 GC.**)

The officer executing any writ of execution founded on a judgment or order shall, on application of the debtor, his wife, agent or attorney, at any time before sale, if such debtor has a family, and if the lands or tenements about to be levied upon, or any part or parcel thereof, constitute the homestead thereof, cause the inquest of appraisers, upon their oaths, to set off to such debtor, by metes and bounds, a homestead not exceeding one thousand dollars in value; such assignment of the homestead shall be returned by the officer along with the

writ, and shall be copied by the clerk into the execution dock-- et; **and if no complaint be made by either party, no further proceedings shall be had against the homestead; but the remainder of the debtor's lands and tenements, if any there be, shall be liable to sale on execution;** upon complaint of either party, and upon good cause shown, the court out of which the writ issued may order a re-appraisement and re-assignment of the homestead; but if no application be made during the lifetime of the debtor, it may be made by the widow of the judgment debtor at any time before a sale."

R. S. Sec. 5439 (now **Sec. 11735 GC)** provides for the procedure to be followed when the property will not bear division. The appraisers must determine a fair and reasonable rent for the property and the debtor is required to pay that amount of rent in excess of $100.00 annually. The Statute further provides:

"If the rent be not paid quarterly, as above provided, or within ten days after each and every payment becomes due, the officer shall proceed and sell the homestead, in the same manner as is provided in other cases for the sale of real estate, but it shall not be sold for less than its appraised value;"

Turning to the provisions of Bankruptcy Act of 1898, we find Sec. 70 (a) in part provides:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, **except insofar as it is to property which is exempt, to all** * *"

(5) Property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

By express provision of the Bankruptcy Act the Trustee in Bankruptcy was vested by operation of law as of the date the bankrupt was adjudged a bankrupt, with title only to property which, prior to the filing of the petition, he could, by any means, have transferred or which might have been levied upon and sold under judicial process against him. With respect to exempted property the Act also expressly provides that such exempted property shall be excepted. In other

words, exempted property does not vest in the Trustee. While the Trustee has the right of possession, until the exempt property is set off the title to exempt property remains in the bankrupt. Thus,

"Exempt property constitutes no part of an estate in bankruptcy and does not pass to the Trustee. Exemptions are created by the state law, and the function of the Bankruptcy Court is to sever the property found to be exempt from the estate of the bankrupt, the title remaining in the bankrupt, the Trustee having merely a qualified right to possession."

Gilbert's Collier on Bankruptcy,
2nd Ed. Sec. 70, VI. Page 1227.

The facts show that Henry B. Converse and his wife were living together in the family homestead at the time bankruptcy proceedings were instituted. Under the provisions of R. S. Sec. 5435, he was entitled to hold exempt from sale a family homestead not exceeding one thousand dollars in value. In his petition in bankruptcy he reserved to himself such property "as is exempt by law." In due recognition of his claim to exemption and in conformity to the provisions of R. S. Sec. 5435 and R. S. Sec. 5438, there was set off to him as his homestead the 5 acres in controversy. The Trustees then proceeded with a suit to sell 280 acres, which included the 5 acre tract set off as a homestead. In the order confirming the sale the Trustees were ordered to execute and deliver a deed to William Morgridge, the purchaser, for said land "subject to the homestead rights of the said Henry B. Converse as set forth in the petition therein." In pursuance of said court order the Trustees did execute and deliver a deed conveying said 280 acres to said William Morgridge; which deed, after describing said lands, provided: "Subject to the right of said Henry B. Converse to use and occupy as a homestead a portion thereof, described as follows, viz:" (Here follows a description of the 5 acres as is set out in the petition.)

Did the Bankruptcy Court exceed its jurisdiction in selling the 5 acre homestead tract subject to Henry B. Converse's homestead exemption? Under the provisions of R. S. Sec. 5435, the bankrupt, after making demand for homestead exemption, and after the homestead had been set off, was entitled to hold said homestead "exempt from sale, on judgment or order" of the Bankruptcy Court. The proviso in R. S. Sec. 5435, relating to the sale of the homestead, subject to homestead right upon

the written consent of husband and wife, applies only to assignments for the benefit of creditors. This statutory provision must be considered in conjunction with the provisions of R. S. Sec. 6348 (now **Secs. 11111 and 11112 GC**) which in part provides:

"No assignment for the benefit of creditors shall be construed to include or cover any property exempt from levy or sale on execution, or from being by any legal process applied to the payment of debts, unless in the assignment the exemption is expressly waived,"

The proviso in R. S. Sec. 5435 constitutes the amended part of the Section, said amendment being made in 1900. In 1883 the case of **Werhle v. Werhle, 39 Oh St 365** was decided, in which it was held that the statute, as it then existed, did not authorize the sale of homestead land subject to the homestead. The Court specifically held that the order of the court, directing and confirming a sale of real estate assigned as a homestead, subject to the homestead, and while the same is occupied as such homestead, was not merely voidable but void. It is easily understood why the proviso, or the amended part of R. S. Sec. 5435, should be made applicable only to assignments for the benefit of creditors. In such cases the assignor conveys title by deed of assignment to the assignee. In assignment cases the Legislature saw fit to authorize the court to sell the homestead land subject to the homestead right upon the written consent of the husband and wife. There is no comparable provision applicable to bankruptcy proceedings. In **Taylor v Thorn, 29 Oh St 569,** the Administrator of the decedent's estate filed a supplemental petition to sell homestead lands after the homestead right had terminated. The court, on **page 576,** say:

"As soon as the right to occupy the premises set apart for a homestead ceased to exist, there would be other assets to be administered. When such assets would become available was, to some extent, uncertain; for, while the homestead right would certainly end at the becoming of age of all the minor children, it might terminate before by their death; and upon its termination the creditors would be entitled to the further assets to be derived from the sale of the premises which had been so occupied."

We conclude that the jurisdiction of the Bankruptcy Court over the 5 acre homestead tract ended when it determined the question of exemption and set aside said tract as a homestead. Our conclusion is supported by the language used in R. S. Sec. 5438, wherein it provides:·

"and if no complaint be made by either party no further proceedings shall be had against the homestead; but the remainder of the debtor's lands and tenements, if any there be, shall be liable to sale on execution;"

Thus it appears that only "the remainder of the debtor's lands and tenements" shall be liable to sale. From this statutory provision an implication clearly appears. If the "remainder" only is subject to sale, the part set aside as a homestead is not subject to sale. Support for our conclusion is also found in the provisions of R. S. Sec. 5439, which provides that if the rent is not paid as ordered, "the officer shall proceed and sell the homestead in the same manner as is provided in other cases for the sale of real estate."

Thus we find the statute authorizes the sale of homestead property under certain conditions, but these conditions do not obtain in the instant case. During the life of Henry B. Converse and that of his widow, both of whom resided on the homestead tract until their death, the Bankruptcy Court was without jurisdiction to order the sale of said property.

We are not required to determine, and we do not decide, the nature and quality of the homestead right held by the bankrupt and his widow. Neither are we required to determine and do not decide, what may be done on behalf of the creditors after the death of the widow, which terminated the homestead right. It is sufficient for the determination of the issues presented to hold that the Bankruptcy Court had no authority in law to order the sale of the homestead property during the lifetime of the bankrupt and his widow.

Can the order and judgment of the Bankruptcy Court be attacked collaterally? We are of the opinion that the Bankruptcy Court did not have jurisdiction of the subject matter, viz: the power to administer as assets and the sale of the homestead property. However, we find the law to be that where the court has jurisdiction over the parties and the subject matter, if it makes an order which is not within the powers conferred upon it, its order is void. This proposition of law was laid down in **Russell v 4th Natl. Bank, 102 Oh St 248,**

in the opinion of which the court, on **page 260,** quotes from 15 R. C. L., Sect. 327, as follows:

"While it is well settled that a judgment cannot be questioned collaterally for an error committed in the exercise of jurisdiction, the rule is equally well established that a judgment may be attacked in a collateral proceeding for error in assuming jurisdiction. Even where a court has jurisdiction over the parties and the subject matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization, its decree is void."

The court in Russell v 4th National Bank, Supra cites numerous cases, among which is, For United States, To the Use of Wilson v Walker, 109 U. S. 258, quoting from the opinion of that court on page 266, as follows:

"Although a court may have jurisdiction over the parties and subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization its decree is void."

It is claimed by plaintiffs-appellees that the Bankruptcy Court had original and exclusive jurisdiction to determine all questions relative to exemptions. True, under the Bankruptcy Act, original and exclusive jurisdiction is conferred on the Bankruptcy Courts to "determine all claims of bankrupts to their exemptions." (Sec 2, Bankruptcy Act of 1898.) This jurisdiction was exercised in the instant case. The bankrupt claimed his exemption and the Bankruptcy Court determined his right to his exemption and set it off. The issue raised here does not involve the act of the Bankruptcy Court in determining the matter of exemption, but rather to the act of the court in attempting to effect a sale of exempted property, in excess of its jurisdiction. Jurisdiction given to Bankruptcy Courts to determine the claim of the bankrupt to an exemption, falls far short of conferring jurisdiction to sell exempt property contrary to the provisions of the state law, which the Bankruptcy Courts must recognize and enforce.

Plaintiffs-appellees contend that the court should apply the rule that "a due regard for the solemnity of judicial proceedings has been said to require strict observance of the general rule denying the right collaterally to attack a judgment;" and that "it has been designated a salutary rule, established for the peace of society, founded on those considerations of public policy which require stability of judicial records,

to give confidence in the judicial action of the country, to protect those who have made purchases on the faith of judicial sales or have acquired rights and property in reliance on their conclusive effect." **Vol. 23 O. Jur. Page 1120, Sec. 965.** This rule is properly applied to that wide range of cases wherein defects are found in judicial proceedings, but where the court has jurisdiction of the subject matter.

There is another rule of law which is more fundamentally and which is more deeply rooted in our system of jurisprudence, the proper observance of which is necessary to the orderly administration of justice, viz: legal effect will only be given to judicial proceedings when the court acts within its jurisdiction and when there is a want of jurisdiction such proceedings are held to be null and void. In **Vol. 11 O. Jur. page 669, Sec. 26,** the rule is stated:

"It has already been stated that if the court has jurisdiction its judgment, however erroneous, is not void. On the other hand, if it proceeded without jurisdiction, it is equally unimportant how technically correct, and precisely certain in point of form, its record may appear; its judgment is void to every intent and for every purpose and must be so declared by every court in which it is presented."

In the same Section it is held:
"In the one case, i. e., where the court has jurisdiction, the court is invested with the power to determine the rights of the parties, and no irregularity or error in the execution of the power can prevent its judgment, while it stands unreversed, from disposing of such rights as fall within the legitimate scope of its adjudication; while in the other case, i. e., where it has no jurisdiction, its authority is wholly usurped, and its judgments and orders are the exercise of arbitrary power, under the forms, but without the sanction, of law."

In Vol. 66, A. L. R., page 926, there appears an annotation to the case of Cline v Niblo, 117 Tex. 474, 8 S. W. (2d) 633, which held that the decree of a Probate Court, ordering and approving the sale of homestead property, is void for lack of jurisdiction over the subject matter and may be attacked in collateral proceedings, although its void character may not appear on the face of the record. In the annotation the rule is stated:

"The courts have generally held that a sale of homestead property for debts other than purchase money, taxes or work and materials used in improvements thereon, is void for lack of jurisdiction, and is subject to collateral attack."

Numerous cases are cited, one of which is Werhle v Werhle, supra.

Are the defendants estopped on the ground of laches? The trial court in its opinion held that the bankrupt was guilty of laches, which would work an estoppel not only against him, but against those who claim under him. The trial court based its finding on the fact that the bankrupt was given the right to a review of the order of the Bankruptcy Court in the proper forum and that since he took no action during the thirteen years immediately following the order of the Bankruptcy Court he was guilty of laches and was estopped. In **Vol. 16 O. Jur. page 592**, the elements which must ordinarily be present in order to constitute estoppel are summarized as follows:

"There must be a misrepresentation of the facts, or a wilful concealment of the same, and this representation or concealment must be made with a knowledge of the facts, and the party to whom the representations are made, or from whom there is concealment, must be ignorant of the facts, and it is very essential that the representation or concealment must be made with the intention of having the other party act upon it. It must also appear that the other party was induced to act upon it."

Did Henry B. Converse make any representation to the purchaser, or conceal from him any fact which he should have disclosed? The record is silent on this matter. There was no duty resting on the bankrupt to advise the purchaser relative to his rights. The facts relative to the title were as much, or more so, within the knowledge of the purchaser as the bankrupt. In Vol. 19 Amer. Jur. page 776, Sec. 119, it is held that estoppel cannot be predicated on the sole element of silence. The text is as follows:

"There is some little support among the authorities for the doctrine that, in order to raise an estoppel to assert an interest in real property, something more than a standing by in silence must be proved. This doctrine has been propounded both in cases involving transactions based upon contracts and in

cases involving transfers of property by judicial sales. Its application in cases of the latter description is deemed to be justified by the consideration that the rights of the purchaser are those defined by the principle embodied in the maxim, 'caveat emptor,' and that this principle imposes upon him the duty of making an investigation into the state of the title of the property sold and consequently affects him with notice of any facts which are ascertainable from public records."

In **Ayres v Cook, 140 Oh St 281,** it is held that "one who is not misled to his injury by the conduct of another cannot claim estoppel."

"The doctrine of laches and of estoppel are closely allied and laches is sometimes spoken of as a species of estoppel. Laches arises not from mere delay but from delay which results in such a disadvantage to the adverse party that to entertain the action would accomplish an inequitable result. In other words, laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time and other circumstances, causes prejudice to the adverse party and therefore operates as a bar in a court of equity."

We fail to see how the failure of the bankrupt to take some action to clear up the question of title to the homestead tract in any manner was prejudicial to the rights of the purchaser. Lapse of time in determining this question did not cause injury to the purchaser, as rights became vested and fixed at the time of the sale of the homestead tract by the Bankruptcy Court. Furthermore, we are of the opinion that no duty rested upon the bankrupt to institute legal proceedings to quiet the title to said real estate. In this case we are dealing with the rights of the parties under an order of court, which acted without jurisdiction. In such a situation, the failure on the part of any person to act would not validate an otherwise void judgment.

In Vol. 31, Amer. Jur. page 299, Sec. 760, it is held that "laches does not operate to preclude the opening or vacating of a void judgment, for the reason that no amount of acquiescence can make it valid."

We are of the opinion that the trial court committed prejudicial error in holding that the Bankruptcy Court had jurisdiction to sell the homestead tract subject to the homestead exemption right, and that the order of sale, sale, confirmation and deed executed thereunder, even if in excess of the court's jurisdiction, are not subject to collateral attack. Furthermore,

we are of the opinion that the trial court committed prejudicial error in holding that Henry B. Converse, and those claiming under him are estopped by laches from asserting in this proceeding that the Bankruptcy Court exceeded its jurisdiction and from asserting that the order of sale, sale, confirmation and deed executed thereunder were void.

The judgment of the trial court will be reversed.

WISEMAN, PJ, and MILLER, J, concur. (HORNBECK, J, not participating.)